**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**GREGORY H. SCHLICHER,**

> **Plaintiff,**

**vs.**                                                           **Case No. 4:08cv81-SPM/WCS**

**JAMES R. McDONOUGH, et al.,**

> **Defendants.**

_____/


## REPORT AND RECOMMENDATION

Plaintiff, an inmate proceeding *pro se* and *in forma pauperis*, filed a fourth

amended complaint, doc. 30, and all nine Defendants have filed a motion to dismiss

pursuant to 42 U.S.C. § 1997e(a). Doc. 51. Defendants attached copies of Plaintiff's

grievances and an affidavit to the motion. *Id.* Plaintiff was advised of his obligation to

respond to the motion, and it was noted that Plaintiff had already filed a response, doc.

52, and an affidavit, doc. 53. *See* doc. 54. All parties were advised of the opportunity to

submit evidence in support of, or in opposition to, the motion to dismiss. Doc. 54. In

response, Defendants filed a supplement to the motion to dismiss, doc. 57, with

additional evidence in support of their argument that Plaintiff did not exhaust

administrative remedies as required by 42 U.S.C. § 1997e(a).  Plaintiff was given

additional time to respond to the motion to dismiss, *id.*, and that deadline has now

passed without anything further directed to that motion.

Plaintiff filed a motion for certain items of discovery, doc. 56, but the motion was

denied as the discovery sought was not relevant to the issue of exhaustion.  *See* doc.

59.  Plaintiff has filed a motion for reconsideration.  Doc. 62.  That motion is denied

today by separate order.

**Standard of Review**

The "defense of failure to properly exhaust available administrative remedies

under the PLRA should be treated as a matter in abatement."  Bryant v. Rich, 530 F.3d

1368, 1374 (11th Cir. 2008), *explained in* Turner v. Burnside, 541 F.3d 1077, 1083 (11th

Cir. 2008).  Deciding an exhaustion issue is "not ordinarily the proper subject for a

summary judgment" motion; instead it should be considered in a motion to dismiss.

Bryant, 530 F.3d at 1374-75.  Thus, despite the fact that evidence has been presented,

the motion need not be converted into a summary judgment motion.  The opportunity to

present evidence simply provides Plaintiff with "a meaningful opportunity to oppose" the

motion to dismiss.  530 F.3d at 1371, n.2.  Having a sufficient record of Plaintiff's

grievances enables full, complete consideration of the exhaustion issue.  Factual

disputes concerning the exhaustion of administrative remedies may be decided by the

court sitting as fact-finder, "so long as the factual disputes do not decide the merits and

the parties have sufficient opportunity to develop a record."  530 F.3d at 1373-74, 1376.

When motions to dismiss are based on issues not enumerated under Rule 12(b), then

Rule 43(c) governs "which permits courts to hear evidence outside of the record on affidavits submitted by the parties." <u>Bryant</u>, 530 F.3d at 1377, n.16.

**Exhaustion Requirement**

When the Prison Litigation Reform Act was enacted, Congress provided that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a), *quoted in* doc. 68, p. 2. The exhaustion requirement of § 1997e(a) is mandatory, whether the claim is brought pursuant to § 1983 or <u>Bivens</u>. <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1324-26 (11th Cir. 1998). The exhaustion requirement of § 1997e(a) is not jurisdictional, however. <u>Bryant v. Rich</u>, 530 F.3d 1368, 1374 n.10 (11th Cir.), *cert. denied*, 129 S.Ct. 733 (2008) (citing <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 2392, 165 L.Ed.2d 368 (2006)). There is no discretion to waive this requirement or provide continuances of prisoner litigation in the event that a claim has not been exhausted prior to filing. <u>Alexander</u>, 159 F.3d at 1325; *see also* <u>Porter v. Nussle</u>, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); <u>Brown v. Sikes</u>, 212 F.3d 1205, 1207-08 (11th Cir. 2000) (finding that an inmate must "provide with his grievance all relevant information reasonably available to him" but he cannot be required to name individuals responsible for challenged conduct when he could not yet identify those persons). The Court may not consider the adequacy or futility of administrative remedies, but only the

availability of such.  Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000), *citing*

Alexander, 159 F.3d at 1323.  Even where an inmate seeks only monetary damages in

a civil rights case, he must complete the prison administrative process if it could provide

some sort of relief on the complaint although monetary relief cannot be provided

administratively.  Booth v. Churner, 531 U.S. 956, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d

958 (2001).  "Requiring exhaustion allows prison officials an opportunity to resolve

disputes concerning the exercise of their responsibilities before being haled into court."

Jones v. Bock, 549 U.S. 199, 204-209, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007)[1].

A prisoner must also comply with the process set forth and established by the

grievance procedures.  *See* Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).  In

other words, not only must a prisoner exhaust a claim under § 1997e(a), the "PLRA

exhaustion requirement requires proper exhaustion."  Woodford v. Ngo, 548 U.S. 81,

93, 126 S.Ct. 2378, 2387 (2006) (concluding that "proper exhaustion" means complying

with the specific prison grievance requirements, not judicially imposed requirements).

Even if a grievance is initially denied as untimely, a prisoner must appeal the denial of

the grievance.  *See* Harper v. Jenkin, 179 F.3d 1311 (11th Cir. 1999) (noting Georgia's

inmate grievance procedures allow "the grievance coordinator to waive the time period

for filing a grievance if 'good cause' is shown"); Bryant v. Rich, 530 F.3d at 1373.  If one

claim is unexhausted, the Court may separate that claim out and proceed on only those

claims that have been exhausted.  Brown, 212 F.3d at 1206, n.1; Jones, 549 U.S. at

---

[1] The Court further rejected the view of the Sixth Circuit when it concluded that
"nothing in the statute [§ 1997e(a)] imposes a 'name all defendants' requirement."
Jones v. Bock, 549 U.S. at 217-219, 127 S.Ct. at 922-923 (concluding "that exhaustion
is not *per se* inadequate simply because an individual later sued was not named in the
grievances.").

223, 127 S.Ct. at 925 (rejecting a "total exhaustion rule" and requiring dismissal only of those unexhausted "claims," not an entire "action.").

Defendants "bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008), *relying on* Jones v. Bock, 549 U.S. 199, 127 S.Ct. at 910, 921, 166 L.Ed.2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Dixon v. United States, 548 U.S. 1, 8, 126 S.Ct. 2437, 2443, 165 L.Ed.2d 299 (2006) (stating that, as a "general evidentiary rule," the burdens of production and persuasion are given to the same party); Roberts v. Barreras, 484 F.3d 1236, 1240 (10th Cir. 2007) ("Jones does not spell out the proper burden of proof to use in evaluating exhaustion claims, but circuits that treated exhaustion as an affirmative defense prior to Jones have all put the burden of proof on defendants, to the extent that they addressed the issue.").

However, an inmate is not required to grieve a "breakdown in the grievance process" because the PLRA only requires that a prisoner exhaust his "available administrative remedies." Turner v. Burnside, 541 F.3d 1077, 1083 (11th Cir. 2008). "[I]t is possible for retaliation or the threat of retaliation to make administrative remedies unavailable to an inmate." *Id.*, at 1084 (citations omitted).

> A remedy has to be available before it must be exhausted, and to be "available" a remedy must be capable of use for the accomplishment of [its] purpose." Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available.

*Id.* (citation omitted).

We conclude that a prison official's serious threats of substantial retaliation against an inmate for lodging or pursuing in good faith a grievance make the administrative remedy "unavailable," and thus lift the exhaustion requirement as to the affected parts of the process if both of these conditions are met: (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

*Id.*. at 1085.

**Allegations of the Complaint**

Plaintiff's complaint concerns events at Taylor Correctional Institution in the summer of 2007. Doc. 30. Plaintiff alleges that he was harassed and threatened with physical harm for using the grievance procedures. *Id.*, at 7. Plaintiff claims that after he filed an informal complaint concerning the unavailability of grievance forms, he was threatened by several different prison officials with the use of chemical agents and told he would find himself in confinement. *Id.* Plaintiff then alleges a series of harassing acts by staff, including confinement in a cell, deprivation of his wheelchair, and being told that that his food trays were contaminated. *Id.*, at 7-11. Plaintiff alleges the abuse was severe enough that he sought psychological help, which he contends was also refused by the Defendants. *Id.*, at 11. Plaintiff alleges Eighth Amendment violations, and violation of the First Amendment for acts which prevented him from pursuing the grievance system and retaliated against him when he was able to do so. *Id.*, at 11-13.

**Evidence of Exhaustion**

Plaintiff is housed within the Florida Department of Corrections which has an administrative grievance program, Fla. Admin. Code R. 33-103. There is a three-step

process in the grievance procedures, requiring an inmate to file an informal grievance, a formal grievance, and then a grievance appeal to the Office of the Secretary.

Plaintiff's claims took place during the summer of 2007, with the majority of events occurring in September and October, 2007. Doc. 30, pp. 7-11. Plaintiff alleged that on August 28, 2007, he was placed in confinement at Taylor Correctional Institution. *Id.*, at 8. It is not clear exactly when Plaintiff entered the infirmary, but he alleges being there on September 28, 2007. *Id.*, at 10. On October 6, 2007, Plaintiff was transferred to the Annex Confinement area of Taylor Correctional Institution, *id.,* and transferred away from Taylor Correctional Institution in mid-October, 2007. *Id.*, at 9. It appears that Plaintiff was sent to Charlotte Correctional Institution. *Id.*, at 11. Plaintiff alleges that he was "held in a suicide cell for 11 days before being sent to a crisis unit." *Id.*, at 11. It is unknown when and where that occurred.

Defendants point to several grievances submitted by Plaintiff from the summer of 2007 complaining about denial of a meal tray by Mrs. Keys, kitchen staff at the institution, denial of access to the law library, and denial of hot water and grievance forms. Doc. 51, pp. 2-5, *citing to* doc. 30 (*see* doc. 30-2, p. 4). Defendants also point to an informal grievance submitted by Plaintiff in October, 2007, complaining about not being given psychotropic medications. *Id.*, at 1, *citing* to doc. 30, p. 40. None of those grievances ever went through all stages of the grievance system. All ended with just an informal grievance.

Defendants have submitted that affidavit of Ashley Stokes, with the Bureau of Inmate Grievance Appeals. Stokes states that the Department's records reveal that Plaintiff submitted one grievance appeal on November 21, 2007, log # 07-6-30964,

concerning the denial of access to grievance forms. Doc. 51-2, p. 2 (Stokes affidavit, p.

2). It was "returned without action" on December 5th because Plaintiff did not first

submit the issue at the institutional level. *Id.* The appeal itself was also presented as

evidence and in it, Plaintiff alleges deprivation of informal grievance forms, outside

recreation, and deprivation of dayroom, television, library, and canteen privileges. Doc.

51-3. Plaintiff complains of placement on CM3 (close manage level 3 status) on

November 17, 2007, and denial of privileges, and unequal treatment. *Id.* The

response, dated December 3, 2007, states that Plaintiff's appeal was being "returned

without action" because it was not in compliance with Chapter 33-103 because he did

not first submit his "appeal at the appropriate level at the institution." *Id.*, at 2.

Plaintiff submitted another grievance appeal, log # 08-6-02666, received on

January 14, 2008. Doc. 51-2, p. 2 (Stokes affidavit, p. 2). That appeal concerned

Plaintiff's claims of retaliation and excessive force. *Id.* Again, the grievance is in the

record, doc. 51-4, and in it Plaintiff alleged that he did not receive a response to his

informal grievance. Doc. 51-4, p. 15. He also complained that garbage was put into his

food, which Plaintiff alleged was proof of the retaliation. *Id.* Likewise, this appeal was

returned without action because it was not in compliance with the rules as Plaintiff did

not first submit his complaint at the institution. *Id.*, at 16.

Stokes states that there are no records that Plaintiff ever filed a grievance appeal

concerning the use of force alleged in the complaint to have occurred on October 10,

2007, denial of psychological help after Plaintiff declared a psychological emergency, or

contaminated food. Doc. 51-2, pp. 2-3 (Stokes affidavit, pp. 2-3). Moreover,

Defendants contend that these grievances demonstrate that Plaintiff did not exhaust the

grievance system concerning his claims in this case, the use of force used against him, denial of psychological treatment, removal of writing materials, tampering with his food, denial of grievance forms, or retaliation. Doc. 51, pp. 5-7. Defendants have shown that Plaintiff never followed the procedures because he did not first file an informal grievance as to each of these claims, followed by a formal grievance, and then followed by a grievance appeal to the Secretary as required by Departmental rules.

Plaintiff contends in response that his letter to the Secretary in September of 2007 should be considered as an appeal. Doc. 52, p. 2. Plaintiff explains that he sent a letter to the Secretary and received a letter response from Connie Hill dated September 18, 2007. *Id.* Plaintiff attached a copy of that letter to his complaint. *See* Doc. 30-2, p. 22. This a letter to Plaintiff from Connie Hill in response to a letter Plaintiff sent to Secretary McDonough complaining of "trying to obtain the necessary forms to file a formal grievance for over a week." Doc. 30-2, p. 22. The documents shows that Plaintiff was complaining of being verbally abused and threatened by the Captain. *Id.* Plaintiff was advised that his concerns were being forwarded "to the Warden's attention for review and appropriate handling."[2] *Id.*

Defendants have shown that Plaintiff "received an orientation on inmate grievance procedures" in the Florida Department of Corrections while at the Reception Center in May of 2007. Doc. 57-2, p. 1. When Plaintiff was sent to Taylor Correctional

---

[2] The actual letter Plaintiff sent to the Secretary has not been presented. It is not necessary since the response is adequate for the purpose of determining whether Plaintiff exhausted administrative remedies. As noted above, Plaintiff's motion for reconsideration relating to production of the letter is denied by separate order.

Institution, he received another orientation the following month on the inmate grievance procedure. Doc. 57-2, p. 2.

Defendants have also presented an affidavit from Orma Stambaugh. Stambaugh states that inmates at Taylor Correctional Institution have access to inmate request forms, which can be used for informal grievances. Doc. 57-3 (Defendants' Ex. E). Inmates also have access to requests for administrative remedy or appeal forms, which are used for filing both formal grievances to the Warden's office, and appeal forms to the Office of the Secretary. *Id.* All of the forms are available in "all housing units," including isolation and confinement cells, and the infirmary, and are available at the law library. *Id.* Inmates who are in the isolation management room are often receiving mental health care and that unit must approve an inmate having the "forms or pens based on safety concerns for the inmate." *Id.* Classification officers have copies of the forms and will also give the to inmates upon request. *Id.* Classification officers visit isolation and confinement cells every day, and while making their rounds, an inmate can request and receive either of the forms. *Id.*

Defendants presented the affidavit of Christine England. England states that all grievance forms are available to inmates at all housing units at Charlotte Correctional Institution as well. Doc. 57-4 (Defendants' Ex. F). Inmates housed there in "the Crisis Stabilization Unit or in the Transition Care Unit have access to pens and grievance forms." *Id.* "The only exception to this is inmates who are on Suicide Observation Status." *Id.* The forms are, similarly, available to inmates in the law library and will be given out upon request by classification officers. *Id.* Ms. England, the grievance coordinator at Charlotte Correctional Institution, personally makes rounds if an inmate

contacts her stating no grievance forms were available. *Id.* She checks to ensure

forms are available at the housing unit and, "if for some reason there are not forms

available there," she provides forms. *Id.* Inmates can also write to her to request forms.

*Id.*

Plaintiff asserts that he was unable to obtain the necessary forms for grievances

at the institution. Doc. 52, pp. 2-3. Plaintiff also claims that between October 10, 2007,

and October 22, 2007, Plaintiff was placed in isolation and "all of his writing material

was removed from his cell," precluding him from filing a grievance. *Id.*, at 5. On or

about October 22, 2007, Plaintiff was transferred to Charlotte Correctional Institution

and placed in the crisis unit for another ten days. *Id.*, at 5-6. Plaintiff asserts that

pursuant to departmental policy[3] and procedures, he was then "time barred" from filing.

*Id.*, at 6. Plaintiff contends his psychological condition rendered him unable to submit

grievances. *Id.* Plaintiff further asserts there was "no viable reason" for him to raise the

"use of force" issue "after the fact" since he contends he tried to advise the Inspector

General's Office of the arising problem before the use of force occurred, but he had no

results from his efforts. *Id.*, at 6-7.

Plaintiff also submitted an affidavit to refute the Stokes affidavit, doc. 51-2. Doc.

53. Plaintiff's affidavit reiterates that he attempted to exhaust his administrative

remedies by sending a "hand drafted" appeal letter to the Secretary in early,

September, 2007. Doc. 53, pp. 1-2. Plaintiff also testifies that in August of 2007, he

sent a letter to the Inspector General's Office complaining of retaliation. *Id.*, at 2.

---

[3] Plaintiff cites to FLA. ADMIN. CODE R. 33-103.011(1)(d) which states that "direct
grievances to the office fo the Secretary must be received within 15 calendar days . . . ."
Doc. 52, p. 6.

Plaintiff's affidavit reiterates that while in isolation, he did not have "writing materials" to file a grievance and by the time he was released, he was "time barred." *Id.*, at 2.

**Analysis**

Plaintiff's argument that there was no "viable reason" to raise the issue of the use of force "after the fact" is unpersuasive. Plaintiff had an obligation to alert prison officials to improper actions of correctional officer *before* turning to the judicial forum. *See* Porter v. Nussle, *supra*. The PLRA requires inmates to exhaust claims about prison life, "whether they allege excessive force or some other wrong." Filing a grievance after the fact would enable Plaintiff to identify those who allegedly harmed him by the use of excessive force.

As noted above, the law requires prisoners to comply with the grievance procedures. *See* Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). The PLRA also requires "proper exhaustion." Woodford v. Ngo, *supra*. Thus, Plaintiff must have presented his claim through each step of the grievance process. Plaintiff did not do so.

There is evidence that Plaintiff filed only one formal grievance (doc. 30-2, p. 5)[4] after initiating informal grievances in July (doc. 30-2, p. 4), and August (doc. 30-2, p. 3). That formal grievance was "returned without action" because Plaintiff did not attach his informal grievance and response to it as required. *See* doc. 30-2, p. 6. Therefore, it is not proof of exhaustion. Even if it were accepted instead of being returned, Plaintiff would have been required to submit an appeal to the Secretary's Office concerning the

---

[4] That formal grievance was submitted to the Warden in early August of 2007 and concerned the refusal of Mrs. Keys to give Plaintiff a meal tray.

issue raised, assuming his grievance was denied.  Plaintiff did not do so and, thus, did not submit grievances through each step of the grievance process.

Plaintiff attempts to show that he submitted a "direct grievance" to the Secretary, but those are limited to very specific circumstances.  The rules permit direct grievances of "emergency grievances, grievances of reprisals, or grievances of a sensitive nature" and those are to be filed on the grievance appeal form, Form DC1-303.  FLA. ADMIN. CODE R. 33-103.007(6)(a).  Plaintiff's letter to the Secretary did not follow the procedure for a direct grievance because he did not clearly allege reprisal.  He primarily complained that grievance forms were not available.  The rules also require that an inmate state at the beginning of a direct grievance that it is one of the exceptions for bypassing the institutional level of the grievance process, and he must state why he did not bring it to the attention of institutional staff.  FLA. ADMIN. CODE R. 33-103.007(6)(a)1, 2.  Furthermore, even if Plaintiff intended to submit the letter as a direct grievance, the letter advising him that it was being sent to the warden was sufficient notice to Plaintiff that it was not accepted as a direct grievance to the Secretary.  Plaintiff could not have reasonably believed that sending the letter was sufficient to constitute a direct grievance.  Further, even if this letter were a direct grievance, it was sent to the Secretary in early September, 2007, *before* the majority of Plaintiff's allegations, and the response is dated September 18, 2007.  Most relevant events, as alleged in the fourth amended complaint, take place *after* September 20, 2007, and into October when chemical agents were used on him.  Doc. 30, pp. 10-11.

Plaintiff's argument that he was not provided forms with which he could submit a grievance does not save this case either.  Florida, like Georgia, permits a "grievance

coordinator to waive the time period for filing a grievance if 'good cause' is shown."

Harper v. Jenkin, 179 F.3d 1311 (11th Cir. 1999). Plaintiff could have requested

permission to proceed belatedly, especially raising the circumstances of being in

confinement without writing materials and having psychological trauma. Furthermore, if

Plaintiff was unable to submit grievances because the Defendants were not providing

him with the forms, Plaintiff was transferred from Taylor Correctional Institution in mid-

October, 2007, and arrived at Charlotte Correctional Institution. Plaintiff could have

obtained the forms at that institution and grieved about what took placed at Taylor

Correctional Institution. Plaintiff never sought leave to file out of time, and none of the

claims raised in this case have been exhausted. This action must be dismissed.

**RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants'

motion to dismiss, doc. 51, be **GRANTED,** and that Plaintiff's fourth amended complaint,

doc. 30, be **DISMISSED** for failure to exhaust administrative remedies pursuant to 42

U.S.C. § 1997(e) and for failure to state a claim upon which relief may be granted

pursuant to 28 U.S.C. § 1915(e)(2), and that the order adopting this report

and recommendation direct the Clerk of Court to note on the docket that this cause was

dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**IN CHAMBERS** at Tallahassee, Florida, on October 15, 2009.

 s/      William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.